David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUSTRALIA A. HOOVER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STEADYMED LTD, KEITH BANK, JONATHAN M.N. RIGBY, RON GINOR, DONALD D. HUFFMAN, ELIZABETH CERMAK, STEPHEN J. FARR, and BRIAN J. STARK,<br><br>Defendants. | Civil Action No. 3:18-cv-03841<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff Australia A. Hoover ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**<u>NATURE OF THE ACTION</u>**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other shareholders of SteadyMed Ltd ("SteadyMed" or the "Company") against SteadyMed and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with SteadyMed, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Item 1015 of Reg M-A, 17 C.F.R. 229.1015,

**CLASS ACTION COMPLAINT**

in connection with the proposed acquisition (the "Proposed Transaction") of SteadyMed by United Therapeutics Corporation ("United Therapeutics").

2.      On April 29, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each ordinary share of SteadyMed will be converted into the right to receive (a) $4.46 in cash, without interest and less any applicable withholding taxes with respect to such cash consideration and the CVR (as defined below) ("Closing Cash Consideration"), plus (b) one contractual contingent value right (each, a "CVR" which will be subject to the Contingent Value Rights Agreement (the "CVR Agreement")), and which will represent the right to receive $2.63 in cash, without interest and less any applicable withholding taxes ("CVR Consideration"), upon the achievement of a specified "Milestone" (collectively the "Buyout Price").

3.      On June 25, 2018, in order to convince SteadyMed's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the Company's projections; (ii) the valuation analyses performed by SteadyMed's financial advisor, Wedbush Securities, Inc. ("Wedbush"), in support of its fairness opinion; and (iii) Wedbush's compensation for acting as financial advisor.

5.      The special meeting of SteadyMed shareholders to vote on the Proposed Transaction is scheduled for July 30, 2018.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the shareholder vote so that they can properly exercise their corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Item 1015.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the

**CLASS ACTION COMPLAINT**

material information discussed below is disclosed to SteadyMed's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) SteadyMed maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiffs is, and at all relevant times has been, a shareholder of SteadyMed.

11.     Defendant SteadyMed is an Israeli corporation and maintains its headquarters at 2603 Camino Ramon, Suite 350, San Ramon, California 94583.  The Company is a specialty pharmaceutical company focused on the development of drug products to treat orphan and high value diseases with unmet parenteral delivery needs. SteadyMed common shares are listed and traded on the NASDAQ under the ticker symbol "STDY."

12.     Individual Defendant Keith Bank is a director of SteadyMed and is the Chairman

**CLASS ACTION COMPLAINT**

1  of the Board.

2  13.    Individual Defendant Jonathan M.N. Rigby is a director of SteadyMed and is the

3  President and Chief Executive Officer of the Company.

4  14.    Individual Defendant Ron Ginor is, and has been at all relevant times, a director of

5  the Company.

6  15.    Individual Defendant Donald D. Huffman is, and has been at all relevant times, a

7  director of the Company.

8  16.    Individual Defendant Elizabeth Cermak is, and has been at all relevant times, a

9  director of the Company.

10  17.    Individual Defendant Stephen J. Farr, and has been at all relevant times, a director

11  of the Company.

12  18.    Individual Defendant Brian J. Stark is, and has been at all relevant times, a director

13  of the Company.

14  19.    The parties identified in paragraphs 11-18 are collectively referred to as the

15  "Defendants."

16  ## CLASS ACTION ALLEGATIONS

17  20.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself

18  and the other public shareholders of SteadyMed (the "Class").   Excluded from the Class are

19  Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

20  with any Defendant.

21  21.    This action is properly maintainable as a class action because:

22  a.    The Class is so numerous that joinder of all members is impracticable.  As

23  of April 30, 2018, there were 34,460,763 SteadyMed common shares outstanding, held by

24  hundreds to thousands of individuals and entities scattered throughout the country.  The

25  actual number of public shareholders of SteadyMed will be ascertained through discovery;

26  b.    There are questions of law and fact that are common to the Class that

27  predominate over any questions affecting only individual members, including the

28

- 4 -
**CLASS ACTION COMPLAINT**

following:

    i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

    ii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CLASS ACTION COMPLAINT**

## SUBSTANTIVE ALLEGATIONS

**I.     Background to the Proposed Transaction and the Deal Announcement**

22.     SteadyMed, incorporated on June 15, 2005, is a specialty pharmaceutical company. The Company is focused on the development and commercialization of various therapeutic product candidates to treat orphan and high-value diseases with unmet parenteral delivery needs. The Company's primary focus is to obtain approval in the United States for the sale of Trevyent for the treatment of pulmonary arterial hypertension (PAH). The Company is also developing approximately two products for the treatment of post-surgical and acute pain in the home setting, which include bupivacaine PatchPump for local anesthesia post-surgery and ketorolac PatchPump for short-term management of moderately severe acute pain. Its product candidates are enabled by its PatchPump.

23.     United Therapeutics, incorporated on June 26, 1996, is a biotechnology company. The Company is focused on the development and commercialization of products for the treatment of chronic and life-threatening conditions. The Company markets and sells four commercial therapies in the United States to treat pulmonary arterial hypertension (PAH): Remodulin (treprostinil) Injection; Tyvaso (treprostinil) Inhalation Solution (Tyvaso); Orenitram (treprostinil) Extended-Release Tablets (Orenitram); and Adcirca (tadalafil) Tablets (Adcirca).

24.     On April 30, 2018, SteadyMed and United Therapeutics issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

### UNITED THERAPEUTICS TO ACQUIRE STEADYMED LTD.

Silver Spring, MD and San Ramon, CA, April 30, 2018:  United Therapeutics Corporation (NASDAQ: UTHR) and SteadyMed Ltd. (NASDAQ: STDY) announced today the signing of a definitive merger agreement under which United Therapeutics will acquire SteadyMed for $4.46 per share in cash at closing and an additional $2.63 per share in cash upon the achievement of a milestone related to the commercialization of Trevyent®.  The transaction, including the $75 million in contingent consideration, is valued at $216 million.

SteadyMed is a specialty pharmaceutical company focused on the development and commercialization of drug product candidates to treat orphan and high-value diseases with unmet parenteral delivery needs.  SteadyMed's product portfolio includes Trevyent, a development-stage drug-device combination product that combines SteadyMed's two day, single use, disposable PatchPump® technology

**CLASS ACTION COMPLAINT**

with treprostinil, a vasodilatory prostacyclin analogue, for the subcutaneous treatment of pulmonary arterial hypertension (PAH). United Therapeutics is a leading biotechnology company focused on the development and commercialization of therapies for the treatment of PAH and other orphan diseases.

"We are optimistic about acquiring SteadyMed and adding Trevyent to our pipeline of products to treat PAH," said Martine Rothblatt, Ph.D., Chairman and Chief Executive Officer of United Therapeutics. "We are especially impressed with SteadyMed's management team and global supply chain. Trevyent fits in well with our mission, and we look forward to bringing the product to the maximum number of patients as soon as possible."

"United Therapeutics has always been at the forefront of developing therapies to treat PAH, and we are delighted at the prospect of our companies coming together, as one, to continue that mission," said Jonathan M.N. Rigby, President and Chief Executive Officer of SteadyMed. "We believe that this proposed acquisition will help us realize our commitment to bring Trevyent to market to improve the lives of patients with PAH."

The Board of Directors of SteadyMed has unanimously approved the merger agreement and unanimously recommends that SteadyMed shareholders adopt the merger agreement. SteadyMed shareholders owning approximately 43.3 percent of the ordinary shares of SteadyMed have entered into an agreement to vote their shares in favor of the transaction.

The transaction is subject to customary closing conditions, including approval by SteadyMed's shareholders and the expiration or termination of the required waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and is expected to be completed in the third quarter of this year.

United Therapeutics received legal advice from Gibson, Dunn & Crutcher and Herzog, Fox & Neeman; SteadyMed received legal advice from Cooley LLP and Yigal Arnon & Co.; and Wedbush PacGrow acted as an advisor to the SteadyMed Board of Directors.

**About United Therapeutics**

United Therapeutics Corporation is a biotechnology company focused on the development and commercialization of innovative products to address the unmet medical needs of patients with chronic and life-threatening conditions.

**About SteadyMed Ltd.**

SteadyMed Ltd. is a specialty pharmaceutical company focused on the development of drug products to treat orphan and high value diseases with unmet parenteral delivery needs. The company's lead drug product candidate is Trevyent, a development-stage drug-devic e combination product that combines SteadyMed's PatchPump technology with treprostinil, a vasodilatory prostacyclin analogue to treat PAH. SteadyMed has signed an exclusive license and supply agreement with Cardiome Pharma Corp. for the commercialization of Trevyent in Europe and the Middle East. In March 2018, Cardiome sublicensed its rights to sell Trevyent in Canada to Cipher Pharmaceuticals. SteadyMed has offices in San Ramon, California and Rehovot, Israel. For additional information about SteadyMed please visit www.steadymed.com.

**CLASS ACTION COMPLAINT**

## II.     The Proxy Is Materially Incomplete and Misleading

25.     On June 25, 2018, SteadyMed filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     First, the Proxy makes inconclusive statements concerning which set of the four different scenarios disclosed in the Financial Forecasts were used to derive Wedbush's fairness opinion: "These four scenarios were reviewed by the Board and the Board authorized the use of the financial forecasts with respect to these four scenarios for the years 2018 through 2028 (the "financial forecasts") by Wedbush in Wedbush's financial opinion." Proxy at 56-57. Adding on page 58:

> In preparing the Wedbush opinion, it was necessary to weight the probability of each scenario. With the authorization of the Board, SteadyMed's management assigned the following weights: Scenario 1 Model, Scenario 2 Model, Scenario 3 Model and Scenario 4 Model, 10%, 50%, 25% and 15%, respectively. However, in light of the uncertainties described above, there can be no assurance as to which of the financial forecasts will be realized or that any of the financial forecasts will be realized, and actual results may vary materially from those shown. In addition, the assignment of probability weightings was made solely for purposes of the financial analysis conducted by Wedbush and the SteadyMed Shareholders are advised not to rely on such probabilities in light of the uncertainties surrounding the assumptions of each of the scenarios.

The failure to disclose which Scenario of the Financial Forecasts served as the basis of Wedbush's fairness opinion renders its summary in the Proxy materially incomplete and misleading.

27.     Numerous courts have championed the importance of management based financial projections. Managers have unique insight into their firm's future that the market does not. Shareholders cannot hope to replicate management's inside view of the Company's prospects. The established case law shows the importance (and, hence, materiality) of financial projections to

**CLASS ACTION COMPLAINT**

shareholders' decision-making. Thus, it is material for shareholders to know which of the forecasted scenarios presented in the Proxy, were used by Wedbush in determining the fairness of the Buyout Price.

28.    Second, with respect to Wedbush's *Discounted Cash Flow Analysis*, the Proxy fails to disclose certain key components used in their analysis. Specifically, the Proxy omits the inputs and assumptions underlying the calculation of the discount rate range of 22.5% to 27.5%.

29.    The discount rates utilized by a banker in performing their discounted cash flow analysis is material to SteadyMed shareholders, and its omission renders the summary of Wedbush's *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

30.    With respect to Wedbush's *Public Comparable Companies* and *Select Precedent Transactions* Analyses, the Proxy fails to disclose the individual multiples Wedbush calculated for each company and transaction utilized. The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading.  A fair

**CLASS ACTION COMPLAINT**

summary of companies and transactions analyses requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

31.     Third, and finally, the Proxy fails to disclose information regarding the fee Wedbush will receive for rendering its fairness opinion and serving as SteadyMed's financial advisor. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is also material to SteadyMed shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

32.     The Proxy merely states "SteadyMed agreed to pay Wedbush fees for its services as SteadyMed's strategic advisor, which fees are contingent upon the success of the Transaction. Wedbush did not receive a separate fee for rendering its opinion. SteadyMed also agreed to pay Wedbush a break-up fee if the Transaction is not consummated under certain circumstances. Wedbush's success fee will become payable upon consummation of the Transaction." Proxy at 52. It does not disclose how much compensation Wedbush will receive for its engagement. The omission of compensation details from Wedbush's agreement to act as financial advisor renders the Proxy and Wedbush's fairness opinion materially incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

**CLASS ACTION COMPLAINT**

33.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the

**CLASS ACTION COMPLAINT**

relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

38.    The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

39.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information concerning: (i) financial projections for SteadyMed; (ii) the valuation analyses performed by Wedbush in support of its fairness opinion; and (iii) Wedbush's compensation.

40.    In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make statements in the Proxy not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Wedbush reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Wedbush as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy,

**CLASS ACTION COMPLAINT**

rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Wedbush's analyses in connection with their receipt of the fairness opinion, question Wedbush as to the derivation of its fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43.    SteadyMed is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

44.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

45.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.    The Individual Defendants acted as controlling persons of SteadyMed within the

**CLASS ACTION COMPLAINT**

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SteadyMed, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

**CLASS ACTION COMPLAINT**

Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**CLASS ACTION COMPLAINT**

DATED: June 27, 2018

Respectfully submitted,

*/s/ David E. Bower*
    David E. Bower

**OF COUNSEL**

    David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**

**MONTEVERDE & ASSOCIATES PC**

    600 Corporate Pointe, Suite 1170
    Culver City, CA 90230
    Tel: (213) 446-6652
    Fax: (212) 202-7880
    Email:  dbower@monteverdelaw.com

Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

- 16 -
**CLASS ACTION COMPLAINT**